**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANDREW COOKE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 14-00584-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Andrew Cooke has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his protective application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* By the consent of the parties (*see* Doc. 25), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Doc. 28).

Upon consideration of the parties' briefs (Docs. 14, 15, 21, 23) and the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s)])"),[1] the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 26, 27).

## I.   **Procedural Background**

Cooke protectively filed an applications for DIB with the Social Security Administration ("SSA") on August 18, 2011, alleging disability beginning December 26, 2008.[2]   (R. 169 – 170).   After his application was initially denied, Cooke requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on December 10, 2012.   (R. 35).   On March 14, 2013, the ALJ issued an unfavorable decision on Cooke's application, finding him "not disabled" under the Social Security Act.   (*See* R. 33 – 50).   Cooke requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review and submitted additional evidence in support of his application.   The Commissioner's decision on Cooke's DIB application became final when the Appeals Council denied Cooke's request for review on October 20, 2014.   (R. 1 – 5).   On December 17, 2014, Cooke filed this action under § 405(g) for judicial review of the Commissioner's final decision.   (Doc. 1).   *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the

---

[2] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a)."   *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).   "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.   42 U.S.C. § 423(a)(1)(A) (2005)."   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).   The ALJ determined that Cooke's last-insured date was June 30, 2014.   (R. 37).

Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is  ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption...that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings;

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

(2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)).  "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).   Finally, but importantly, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

"When no new evidence is presented to the Appeals Council and it denies

review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

1. "The ALJ erred in rejecting the opinion of the examining neuropsychologist, John R. Goff, Ph.D., without identifying any substantial evidence to support the rejection."

2. "The ALJ erred in failing to find Mr. Cooke disabled under Social Security Ruling 85-15."

(Doc. 15 at 1).

### IV.   Analysis

### A.   Claim 1

Cooke alleges disability beginning December 26, 2008, which is the date he was admitted to a hospital due to suffering a "possible" seizure while engaged in his former job of driving a school bus.  (R. 41).  The ALJ found from the record evidence that Cooke showed "no more seizure activity" after that one reported episode. Cooke does not challenge this finding on appeal, nor does he challenge any of the ALJ's findings regarding his physical impairments, only his mental impairments.

After conducting an examination of Cooke on November 19, 2012, Dr. Goff diagnosed him with "adjustment disorder with depressed mood," "moderate to severe reading disorder," "disorder of written expression," and "borderline

intellectual functioning." (R. 429). Dr. Goff also commented that Cooke's "cognitive deficits are problematic and represent interfering factors in regard to vocational activity" and that "[h]is depression at this point represents a severe impairment." (R. 429). Additionally, Dr. Goff completed a Medical Source Opinion Form (Mental), dated November 21, 2012, opining that Cooke had "extreme" limitations in his ability to respond to customary work pressures and to maintain attention, concentration, or pace for periods of at least two hours in a routine work setting, and "marked" limitations in his ability to deal with change in a routine work setting.[5] (R. 430). Dr. Goff's opinion was that the same level of severity existed as early as 2009 and that the limitations he assigned lasted or could be expected to last for 12 months or longer. (R. 431).

At Step One, the ALJ determined that Cooke had "not engaged in substantial gainful activity since December 26, 2008, the alleged onset date." (R. 37). At Step Two, the ALJ determined that Cooke had the following severe impairments: mild coronary artery disease, and one possible seizure episode on December 26, 2008, without subsequent seizure activity. (R. 37). The ALJ noted at Step Two that Dr. Goff had suggested "mental impairments of adjustment disorder with some depressed mood; possible disorder of written expression; and possible borderline intellectual functioning." (R. 38). However, the ALJ expressed skepticism of the severity of Dr. Goff's assessment, concluding that, while Cooke "might suffer some mental impairment[,]" "per the totality of the evidence, his mental impairments

---

[5] The form defined "marked" as: "There is serious limitation in this area. There is a substantial loss in the ability to effectively function." It defined "extreme" as: "There is major limitation in this area. There is not useful ability to function in this area." (R. 430).

appear to be slight abnormalities that – if they exist at all – cause little, if any, limitation in [Cooke's] ability to perform mental work activity" and "are therefore nonsevere."   (R. 38).   At Step Three, the ALJ found that Cooke did not have an impairment or combination of impairments that meets or equals the severity of the specified impairments in the Listing of Impairments.  (R. 40).

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Cooke had the RFC "to perform the full range of

medium work as defined in 20 CFR 404.1567(c)."[6] (R. 40). In formulating this RFC, the ALJ found that Dr. Goff's "assessment of limitations" in the Medical Source Opinion Form was "so contrary to the subjective, medical, and objective evidence of record that it does not merit weight." (R. 47). "As to the remainder of the assessment, the [ALJ] reluctantly allowed for some slight abnormality with slight limitation in [Cooke's] ability to perform mental work activity" but determined "[t]here is no more than nonsevere mental impairment." (R. 48). The ALJ then determined that Cooke was able to perform past relevant work as a bus driver, fish machine feeder, and street cleaner, or, in the alternative, that there are other jobs that exist in significant numbers in the national economy that Cooke can also perform, thus determining that Cooke was not disabled. (R. 49 – 50).[7]

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations…Each classification…has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Medium work" is defined as work that that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, … he or she can also do sedentary and light work." 40 C.F.R. § 404.1567(c).

[7] Cooke does not specify at which Step(s) he claims the ALJ erroneously rejected Dr. Goff's opinions. However, because the ALJ found Cooke to suffer some severe impairments at Step Two, proceeded with the sequential inquiry, and considered Cooke's mental impairments in the later steps, any error at Step Two is harmless. *See Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. July 14, 2011) (per curiam) (unpublished) ("Substantial evidence does not support the ALJ's finding, at step two, that Delia's mental impairments were not severe because the medical evidence showed that these impairments did cause restrictions in daily living, social functioning, and maintaining concentration, persistence, or pace. However, the ALJ deemed several of Delia's other medical impairments to be severe and therefore continued on in the sequential inquiry. The ALJ considered Delia's mental impairments at steps three, four, and five. Because the ALJ gave full consideration to the consequences of Delia's mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless and is not cause for reversal. *See Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence

Cooke asserts that substantial evidence does not support the ALJ's decision to give no weight to Dr. Goff's opinions. " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and

---

in making the disability determination)."); *Hearn v. Comm'r, Soc. Sec. Admin.*, No. 14-15261, 2015 WL 4591811, at *3 (11th Cir. July 31, 2015) (per curiam) (unpublished) ("Any error at step two was harmless because the ALJ found in Hearn's favor as to impairment, and the ALJ properly noted that he considered Hearn's impairments in the later steps." (citations omitted)).

quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240. *Accord, e.g., Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).[8]

There is no denying that the ALJ expressed some suspicion of Dr. Goff's opinion because he assessed Cooke "at the behest of [Cooke]'s representative…" (R. 38. *See also* R. 46 ("Nonetheless, and somewhat incredulously, the claimant's representative directed him to a third party consultative psychological evaluation[ by Dr. Goff].")). Cooke selectively quotes in support a Ninth Circuit decision, *Reddick v. Chater*, for the proposition that "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." 157 F.3d 715, 726 (9th Cir. 1998). *See also Lester v. Chater*, 81 F.3d 821,

---

[8] The ALJ did not consider Dr. Goff, who examined Cooke only once at the time of the hearing, to be a "treating" psychologist, and Cooke does not argue here that Dr. Goff should have been so considered. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) ("[Doctors'] opinions are not entitled to deference because as one-time examiners they were not treating physicians."); 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you … We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.").

832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.  An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner … The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." (quotation marks omitted)); *Moss v. Astrue*, 555 F.3d 556, 560-61 (7th Cir. 2009) (per curiam).

However, the very next sentence in *Reddick* states that "[e]vidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could … form a legitimate basis for evaluating the reliability of the report."  157 F.3d at 726.  *Reddick* thus held that, "**in the absence of other evidence to undermine the credibility of a medical report**, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."  *Id.* at 726 (emphasis added).  *Accord Coheley v. Colvin*, No. 2:13-CV-1810-VEH, 2014 WL 6748991, at *4 (N.D. Ala. Dec. 1, 2014); *Tavarez v. Comm'r of Soc. Sec.*, No. 15-11860, at 12-13 (11th Cir. Jan. 7, 2016) (per curiam) (unpublished) (citing *Reddick*, 157 F.3d at 726)).  *See also Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. July 31, 2001) (unpublished) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel. *See, e.g.*, *Saelee v. Chater*, 94 F.3d 520, 522–23 (9th Cir. 1996) (ALJ justified in finding treating physician's 'report untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from [physician]'s own treatment

13

notes, and was worded ambiguously in an apparent attempt to assist [plaintiff] in obtaining social security benefits'). The ALJ may not automatically reject the opinion for that reason alone, however."); *Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) (per curiam) ("[T]he ALJ in this case discounted both reports for the additional reason that they had been obtained after the claim had been filed and on advice and referral of counsel. In our review of social security disability cases, it appears to be a quite common procedure to obtain further medical reports, after a claim is filed, in support of such a claim. Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them."). This holding is consistent with Eleventh Circuit law. *See Bloodsworth*, 703 F.2d at 1240 (an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion"); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. Oct. 28, 2013) (per curiam) (unpublished) ("[G]enerating evidence is the purpose of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant … The fact that Dr. Eastridge was a one-time consultative examiner retained by the claimant rather than the Commissioner is not, standing alone, a valid basis for rejecting his medical opinion.").

The ALJ did not reject Dr. Goff's assessment solely because it was obtained at the behest of Cooke's representative. The ALJ clearly considered other circumstances under which the report was obtained, *Reddick*, 157 F.3d at 726, noting that Dr. Goff's examination occurred "shortly before the [administrative

]hearing"[9] and that it was "not the result of a treating physician's referral or the claimant's pursuit of mental healthcare." (R. 38). The ALJ was also clear to state his determination that "the medical and objective evidence of record strongly contradicts Dr. Goff's opinion" and that Dr. Goff's "assessment of limitations … is so contrary to the subjective, medical, and objective evidence of record that it does not merit weight." (R. 38, 47). As he was required to do, the ALJ "state[d] with particularity the weight given to [Dr. Goff's] medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. The Court must now determine whether substantial evidence supports those reasons. The answer is "no."

The ALJ determined that "the medical and objective evidence of record strongly contradicts Dr. Goff's opinion" and "contains little evidence of depression let alone indication that the claimant is 'very depressed' …" (R. 38). However, Dr. Goff's Medical Source Opinion Form (R. 430 – 431) was accompanied by five-page evaluation report detailing the objective evidence Dr. Goff considered in formulating his opinions. (R. 425 – 429). This report, which is itself medical evidence, stated that Dr. Goff had interviewed Cooke about his history and had considered a number of Cooke's medical, school, and other records. The report also provided scores and results from a number of psychological tests that Dr. Goff administered (the Wechsler Adult Intelligence Scale, which produced an IQ score of 73 for Cooke; the Reitan-Indiana Aphasia Screening Test; informal clock drawing tasks; the Wide Range Achievement Test, fourth edition; and the Personality Assessment

---

[9] Dr. Goff's examination occurred November 19, 2012 (*see* R. 425), three weeks before Cooke's administrative hearing on December 10, 2012.

Inventory).   The report set forth specific diagnoses of mental impairments: "adjustment disorder with depressed mood," "moderate to severe reading disorder," "disorder of written expression," and "borderline intellectual functioning."  (R. 429) Finally, the report noted that Dr. Goff had administered Cooke the Victoria Symptom Validity Test, "a test for dissimulation of cognitive deficits," which gave "no indications for malingering or dissimulation concerning the cognitive aspects of the examination." (R. 427).

Here, then, the ALJ was presented with a medical opinion regarding Cooke's mental impairments, given by an examining mental health specialist,[10] that was supported by specific diagnoses of mental disorders, psychological test results, [11] and an explanation of the evidence considered.[12]  Dr. Goff considered a number of medical records from Cooke's case file and, as Cooke notes, regularly provides psychological evaluations in disability matters.[13] [14]  The ALJ did not find that Dr.

---

[10] *See* 20 C.F.R. § 404.1527(c)(1) & (5) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you … We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

[11] While the ALJ noted that Dr. Goff "did not provide the actual test materials" with his report (R. 47), there is no indication that this was a significant factor in rejecting Dr. Goff's opinions, and the ALJ gave offered no reason to believe that Dr. Goff was misrepresenting the test results.

[12] *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

[13] *See, e.g.*, *Hubbard v. Colvin*, No. 7:14-CV-1718-CLS, 2015 WL 1958874 (N.D. Ala. May 1, 2015); *Snow v. Colvin*, 8 F. Supp. 3d 1345 (N.D. Ala. 2014); *Smith v. Astrue*, No. CA 09-0244-C, 2009 WL 4058998 (S.D. Ala. Nov. 20, 2009); *Yaw v. Shalala*, No. 94-C-1116-W, 1994 WL 846979, at *1 (N.D. Ala. Nov. 30, 1994).

Goff's assessment or opinion were inconsistent either internally or with each other.

The medical evidence of record noted by the ALJ as "strongly contradicting" Dr. Goff's opinion regarding Cooke's mental impairments consists of cursory statements made by other physicians in the course of primarily assessing physical impairments, seemingly made in passing and based on little more than the physicians' observations of Cooke's demeanor at the time. Two of these physicians, a general practitioner and a cardiologist, cannot reasonably be considered mental health specialists.[15] While neurologist Dr. Brian Hogan could conceivably possess some mental health specialization akin to Dr. Goff's, Dr. Hogan's examinations were primarily focused on assessing Cooke for signs of seizure.[16] Moreover, as

---

[14] See 20 C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.").

[15] The ALJ noted that Dr. Aksut Seydi, a cardiac specialist, "specifically reported no deficit in mental functioning" for Cooke at an August 29, 2011 follow-up examination. (R. 44). The ALJ also noted that, at an October 19, 2012 visit with his general care provider, Dr. Edgar Brown "due to his chronic conditions and acute sinus symptoms," Cooke "was **found to be fully oriented. Insight and judgment were normal. Mood and affect was appropriate.**" (R. 46 (emphasis in original)).

[16] A January 28, 2009 assessment of Cooke by Dr. Hogan, at which Cooke "presented with a complaint of seizure," noted ("contrary to Dr. Goff's report," per the ALJ), that Cook had " 'normal attention span and ability to concentrate, alert and oriented x3 with no impairment of recent or remote memory and able to name object and repeat phrases.' " Dr. Hogan also noted: " 'Neuropsychiatric … **patient's mood and affect are described as – normal.**' " Dr. Hogan assessed several physical impairments and "was silent as to any other impairment, including the results of laboratory screening." (R. 42, 302 – 303 (emphasis added by ALJ)). Cooke revisited Dr. Hogan on April 28, 2009, with "psychiatric evaluation remain[ing] unremarkable…" (R. 43). A third visit with Dr. Hogan on October 28, 2009, produced an "unremarkable" examination, with Cooke reporting "no new medical issues

Cooke correctly notes in his reply brief, Dr. Hogan's examinations were of short duration, each lasting only a few minutes, and there is no indication in his treatment notes that he performed any specialized testing of Cooke's psychological impairments, as Dr. Goff did.  (R. 295 – 315).

Indeed, the ALJ appears to have been more swayed by Cooke's failure to report medical symptoms to his health care providers, repeatedly citing to portions of the record where he believes Cooke should have mentioned them but did not.[17] The ALJ also found significant that Cooke's DIB application "did not allege … depression, emotional distress, or learning disability[,] … did not report a psychotropic medication[,]" and "[i]n fact … specifically denied the existence of a mental impairment or medication."  (R. 41.  *See also* R. 47 (Cooke "did not report any memory problems in his functional report" submitted September 28, 2011), 45 (Cooke "did not report any new physical or mental limitations" in his January 20, 2012 of the initial denial of his DIB application)).  While Cooke "may have failed to seek psychiatric treatment for his mental condition, []it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

since his last visit."  (R. 43).

[17] (*See* R. 42 – 43 (noting that Cooke "did not complain of any deficit in mental functioning" at a March 25, 2009 Department of Transportation physical with a certified nurse practitioner at his primary healthcare provider); 47 ("The claimant never reported depression to any of his treating physicians … When seen one month prior to this exam at Uniontown Health Center he did not report any symptoms of depression ...); 48 (noting that Cooke visited his general healthcare provide Dr. Brown "shortly after [Dr. Goff's] evaluation" complaining of "back pain and chronic conditions[,]" but with "no subjective reports of deficit in mentation" at this examination; noting that Dr. Brown had "treated [Cooke] for well over a decade" and that his "treatment records, including the visits one month before and one after Dr. Goff evaluated [Cooke], simply do not suggest limitation remotely consistent with Dr. Goff's opinion.")).

rehabilitation. The [ALJ] found [Cooke']s complaints less than credible given a perceived paucity of medical proof. However, this should not be a determinative factor in a credibility assessment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (per curiam). *See also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness … Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate."); *Beasich v. Comm'r of Soc. Sec.*, 66 F. App'x 419, 429 (3d Cir. 2003) (unpublished) ("It is true that there was a lack of medical treatment for mental impairment during this period. However, several courts have questioned the relevance of infrequent medical visits in determining when or whether a claimant is disabled." (citing *Blankenship* and *Nguyen*)).[18]

Though disability claimants frequently accuse ALJs of "succumb[ing] to the temptation to play doctor and make their own independent medical findings"

---

[18] Indeed, "[r]etrospective diagnosis of a mental impairments like depression and post traumatic stress disorder, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." *Beasich*, 66 F. App'x at 429. As the ALJ noted, in his testimony before the ALJ, Cooke "attempted to promote Dr. Goff's findings with samplings from his past that he believed supported finding that his mental deficits severely limited or precluded his ability for mental work activity…" (R. 48). The ALJ "was not persuaded by his testimony" but cited primarily to evidence predating Cooke's alleged disability onset date in making this determination. (R. 48).

whenever they reject medical opinions favoring claimants' assertions of disability, [19]

*Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), this case presents a rare instance

in which the undersigned concurs, further undercutting the ALJ's determination.

As noted above, Dr. Goff's report accompanying his opinion expressly ruled out

malingering and dissembling by Cooke, citing the results of objective testing in

support.  Without even acknowledging Dr. Goff's determination that Cooke was not

malingering, much less articulating reasons to discredit it, the ALJ, making his own

use of the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.), a

medical text, independently determined that malingering "should be strongly

suspected" as to Cooke's "performance before Dr. Goff and Dr. Goff's

conclusions…"[20]     (R. 46).  "Although Social Security disability benefits must be

reserved only for those who qualify to receive them, an ALJ may not arrogate the

power to act as both judge and physician[;]" "[a]n ALJ sitting as a hearing officer

abuses his discretion when he substitutes his own uninformed medical evaluations

for those of" medical professionals.  *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th

Cir. 1992) (Johnson, J., concurring).  *See also Freeman v. Schweiker*, 681 F.2d 727,

---

[19] *See, e.g.*, *Snow v. Colvin*, 8 F. Supp. 3d 1345, 1353 (N.D. Ala. 2014) (Kallon, J.) ("[W]ere courts to find that ALJs impermissibly substitute their own opinions for those of medical experts any time ALJs reject the opinions of those medical experts, the ALJ's role in Social Security proceedings would be essentially meaningless.").

[20] Specifically, the ALJ stated: "The guidance Dr. Goff used in assessing the claimant, warns the reader that assessments procured in this fashion are or [sic] questionable value and in fact suggest malingering (American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association (DSM-IV-TR), pg 739, Section V65.2) … 'Malingering should be strongly suspected if any combination of the following is noted … medicolegal context of presentation (e.g., the person is referred by an attorney to the clinician for examination) … marked discrepancy between the person's claimed stress or disability and the objective findings …' (DSM-IV-TR, pg. 739)."  (R. 38, 46).

731 (11th Cir. 1982) (per curiam) (finding that "the ALJ improperly substituted his judgment of the claimant's condition for that of the medical and vocational experts"); *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) (per curiam) ("Here, … the ALJ has rejected the opinions of the treating physician not even on the basis of a differing opinion expressed by another doctor, but rather because ALJ himself reached a different conclusion after viewing the medical records.  Such circumstantial evidence cannot alone support a finding of a nonsevere disability in the face of an opposing conclusion by the treating physician."); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (quotation marks omitted)).

The ALJ also discounted Dr. Goff's opinions based on his conclusion that they were not consistent with Cooke's ability to engage in certain activities.  For instance, the ALJ determined that Cooke's "maintain[ing] a commercial driver's license," his having "recently renewed that license," and his past work as a school bus driver, furniture assembler, and collection and repossession agent were "not consistent with borderline intellectual functioning, or a reading disorder."  (R. 38, 47 ("He also did collections and repossession of furniture again which would require the ability to read and write reports.")).   The ALJ further determined that Cooke's

self-reported daily activities,[21] and his continuing to drive a school bus for a short time after his alleged disability onset date, were "not consistent" with Cooke's allegations of impairment, particularly Cooke's "driving and caring for an autistic son." (R. 45).[22]

The Seventh Circuit Court of Appeals addressed a strikingly similar situation where, "[w]ithout expressly relying on any medical evidence or authority, the ALJ determined that [the claimant]'s efforts at engaging in a small machine repair/resale business were incompatible with a diagnosis of major depression and [the treating psychiatrist's] conclusions regarding [the claimant]'s functional abilities." *Rohan*, 98 F.3d at 970. The Seventh Circuit held that the ALJ had erred in doing so, stating:

> This is precisely the same scenario we confronted in *Wilder*[ *v. Chater*, 64 F.3d 335 (7th Cir. 1995)], where the ALJ believed that the claimant's ability to do certain things (*e.g.* work as a security guard and carry a gun) was inconsistent with a diagnosis of depression. This is not a permissible ground upon which the ALJ may rely. As a panel of this Court explained in *Wilder:*
>
> > Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or

---

[21] "With daily activities, he gets up and gets cleaned up, fixes breakfast, picks wife up from work, watches television, takes wife to work at 2:00 p.m., checks on mother, goes home, eats dinner, watches television, takes medicine and goes to bed. He takes care of his autistic son, and prepares his meals. He also cares for pets … With house and yard work, he does a little laundry and vacuum about ten minutes twice a week … He gets outside daily. He walks, drives a car, or rides in a car. He can go out alone and he drives. He shops in stores. He can pay bills, count change and handle a savings account." (R. 45).

[22] The ALJ also appears to have placed much emphasis on evidence relating to periods before Cooke's alleged disability onset date in December 2008. For instance, the ALJ cited a certificate in household appliance repair Cooke earned in 1981 which "states that the claimant is **duly qualified for employment in positions** under the DOT…" (R. 47 (emphasis by ALJ)). The ALJ also considered Cooke's ability to engage in prior work that predated his alleged disability onset date.

judges, are the experts on it. [Wilder] is entitled to a decision based on the record rather than a hunch. The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture.

64 F.3d at 337–338. As far as discernible from this record, the ALJ simply indulged his own lay view of depression for that of [the treating psychiatrist].

*Id.* at 970-71. *Accord Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here. *See Rohan v. Chater,* 98 F.3d 966, 970–71 (7th Cir. 1996) (**ALJ's may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis**). Under the circumstances, the ALJ should have summoned an expert to provide an informed basis for determining whether Lamanuel is disabled." (emphasis added)). The Seventh Circuit's admonitions in *Rohan* and *Wilder* apply equally to the ALJ's decision here.

In sum, "there is no medical testimony to rebut Dr. [Goff]'s opinion, nor is there overwhelmingly compelling non-medical evidence to the contrary … in the absence of competing medical opinions." *Rivera v. Sullivan*, 923 F.2d 964, 969 (2d Cir. 1991). Even factoring in the "circumstances under which the report was obtained[,]" *Reddick*,157 F.3d at 726 – namely, the mere fact that it was obtained three weeks prior to Cooke's hearing before the ALJ and was not the result of a physician referral – the ALJ's decision to reject Dr. Goff's opinions is not supported

by substantial evidence.  While the ALJ was entitled to cast some suspicion on such an eleventh-hour diagnosis, the ALJ was not entitled to disregard it absent substantial contrary evidence.  To the extent the ALJ believed Dr. Goff's assessment was inconsistent with Cooke's overall history, he had other tools at his disposal to resolve the inconsistency, including ordering a consultative examination.  *See* 20 C.F.R. § 404.1520b(c); *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) ("[B]ecause of the Secretary's duty to develop the medical record fully and fairly, this court has held that it is reversible error for an ALJ not to order a consultative examination **when such an evaluation is necessary for him to make an informed decision.**" (quotation omitted) (emphasis added)).

Accordingly, the Court **SUSTAINS** Cooke's assertion of error in Claim 1.

### B.    Claim 2

Though styled as a separate claim of error, Claim 2 is merely an extension of Claim 1, being based on the premise that, because the ALJ improperly rejected Dr. Goff's opinion, "that opinion must be accepted as true."  (Doc. 15 at 7).  Cooke appears to invite the Court to itself apply Social Security Ruling 85-15 and, after considering Dr. Goff's opinions in conjunction with other evidence in the administrative record, remand with instructions that Cooke be found disabled.

Cooke cites no authority for his proposition that Dr. Goff's opinions must be accepted as true.  As the Commissioner correctly notes (*see* Doc. 21 at 10 n.2), at most, there is authority in this Circuit indicating that when the Commissioner "has ignored or failed properly to refute a **_treating_** physician's testimony, … he has

accepted it as true." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (emphasis added).  As noted previously, Dr. Goff is not a treating medical source. Regardless, *MacGregor*'s holding conflicts with earlier Circuit precedent that remand is the appropriate action where an ALJ's credibility determination was found to be inadequate, and this Court is bound to follow the earlier precedent.  *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. June 22, 2011) (per curiam) (unpublished) ("There is language in *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir. 1986), for the proposition that, if an ALJ fails clearly to articulate reasons for discounting the opinion of a treating physician, that evidence must be accepted as true as a matter of law. However, our earlier decisions had remanded cases to the agency when there was a failure to provide an adequate credibility determination. *See, e.g., Owens*[ *v. Heckler*]*,* 748 F.2d [1511,] 1516[ (11th Cir. 1984)]; *Wiggins v. Schweiker,* 679 F.2d 1387, 1390 (11th Cir. 1982). Pursuant to the prior precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting *en banc* or the Supreme Court. *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir.1998) (*en banc*). Accordingly, rather than broadly accept the doctors' opinions as true, we will remand to the agency so that it can make a determination in the first instance of the proper weight to be afforded to those opinions."); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 n.1 (11th Cir. Dec. 19, 2011) (per curiam) (unpublished) (similar).  *Cf. Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…").  Thus,

the Court **OVERRULES** Claim 2.

## V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued October 20, 2014, denying Cooke's application for DIB benefits is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision.   This remand under sentence four of § 405(g) makes Cooke a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Cooke's counsel an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty days after receipt of a notice of award of benefits from the Social Security Administration.   *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's

past due benefits by the Commission. 454 F.3d at 1278 n.2.").

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 8th day of January 2016.

_/s/ Katherine P. Nelson_
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**